IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| STEVEN M. PRYE, by his next friend, OFFICE OF STATE GUARDIAN; BOB SCALETTY, by his next friend REBBECCA LAKE WOOD; PATRICK W. SHARP, by his next friend REBBECCA LAKE WOOD; individually; and MISSOURI PROTECTION AND ADVOCACY SERVICES, INCORPORATED, a Missouri not-for-profit organization; <br>        Plaintiffs, <br><br>   v. <br><br>MATT BLUNT, in his official capacity as Secretary of State of the State of Missouri; JEREMIAH W. (JAY) NIXON, in his official capacity as Attorney General of the State of Missouri; LEO G. (GARY) STOFF, JR. and JAMES P. O'TOOLE, in their official capacities as directors of the Board of Election Commissioners for the City of St. Louis; MICHAEL A. LUEKEN, in his capacity as secretary and member of the Board of Election Commissioners for the City of St. Louis; DERIO L. GAMBARO, in his capacity as chairperson of the Board of Election Commissioners for the City of St. Louis; ANGELA DA SILVA and YVONNE B. HUNTER, in their capacities as members of the Board of Election Commissioners for the City of St. Louis; BOARD OF ELECTION COMMISSIONERS FOR THE CITY OF ST. LOUIS; SHARON TURNER BLUE and RAY S. JAMES, in their official capacities as directors of the of the Board of Elections for Kansas City; CHERYL LYNN BISBEE, in her capacity as secretary and member of the Board of Elections for Kansas City; LINDA S. TARPLEY, in her capacity as chairperson of Board of Elections for Kansas City; ROSA JAMES and BRUCE B. WAUGH, in their capacities as members of the Board of Elections for Kansas City; and BOARD OF ELECTION COMMISSIONERS FOR KANSAS CITY; <br>        Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 2:04-cv-04248-ODS <br><br>First Amended Complaint for Declarative and Injunctive Relief |

INTRODUCTION

1. The Missouri Constitution prohibits from voting any individual who has "a guardian of his or her estate or person by reason of mental incapacity[] appointed by a court of competent jurisdiction." Mo. Const. Art. 8, § 2. By statute, Missouri restricts any person who has been "adjudged incapacitated" from registering to vote and from voting. V.A.M.S. 115.133.

2. Plaintiff Missouri Protection and Advocacy Service, Incorporated (MOPAS), protects and advocates for Missouri residents with disabilities and brings these claims on behalf of individuals who are competent to vote and would be eligible to vote in Missouri but for the fact that they have been adjudged incapacitated.

3. Plaintiffs Steven M. Prye (Prye), Bob Scaletty (Scaletty), and Patrick W. Sharp (Sharp) have been adjudged incapacitated and appointed a guardian; as a result they are prohibited from voting in Missouri. They would like to vote in future elections.

4. Plaintiffs seek a judgment declaring that the prohibition on registering to vote and voting violates the Due Process Clause of the Fourteenth Amendment to the Constitution of the United States, the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States, the Americans with Disabilities Act, and section 504 of the Rehabilitation Act of 1973. In addition, Prye further seeks judgment declaring that the prohibition on registering to vote or voting as applied to him violates the Full Faith and Credit Clause of the Constitution of the United States.

5. Plaintiffs seek a preliminary and permanent injunction enjoining Defendants from disenfranchising individuals who are competent to vote on the grounds that they have been appointed a guardian.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331, 1343(a)(4).

7. Venue is proper in this Court under 28 U.S.C. §1391(b) and Local Rule 3.2(a)(2). The primary offices of Defendants Blunt and Nixon, from which they implement the challenged provisions of Missouri law, are located in Cole County.

## PARTIES

8. Prye brings this action individually and by his next friend, Office of State Guardian, pursuant to Federal Rule of Civil Procedure 17(c). Prye has been diagnosed with a mental illness, adjudged incapacitated, and appointed a guardian. Prye is substantially limited in the major life activities of self-care, taking care of his personal needs (*e.g.*, eating, dressing, bathing, hygiene, household chores, managing money), and interactions with others. The record of Prye's substantial limitation in major life activities extends back at least three years.

9. Scaletty brings this action individually and by his next friend, Rebbecca Lake Wood, pursuant to Federal Rule of Civil Procedure 17(c). Scaletty has been diagnosed with a mental illness, adjudged incapacitated, and appointed a guardian. Scaletty is substantially limited in major life activity of self care. He also has record of substantial limitation in self care.

10. Sharp brings this action individually and by his next friend, Rebbecca Lake Wood, pursuant to Federal Rule of Civil Procedure 17(c). He has been diagnosed with a mental illness, adjudged incapacitated, and appointed a guardian. Sharp is substantially limited in major life activity of self care. He also has record of substantial limitation in self care.

11. MOPAS has its main office at 925 South Country Club Drive, Jefferson City, Missouri. MOPAS is a not-for-profit corporation duly organized under the laws of the State of Missouri and has been designated by the governor of the State of Missouri as the statewide protection and advocacy agency to protect and advocate for the legal and civil rights of those Missouri citizens who have mental disabilities pursuant to the Protection and Advocacy for Mentally Ill Individuals (PAIMI) Act, 42 U.S.C. § 10801, *et seq.*, and the Developmental Disabilities Assistance and Bill of Rights Act (DD Act), 42 U.S.C. § 15001, *et seq.*; id. § 15041, *et seq*.

12. Pursuant to the PAIMI and DD Acts, as the designated statewide protection and advocacy agency for individuals with mental disabilities in the State of Missouri, MOPAS has the authority and the responsibility to pursue legal remedies or relief as might be necessary to protect and advocate for the rights of individuals with mental disabilities. 42 U.S.C. § 10801, *et seq*.

13. MOPAS brings this action to protect and advocate for the rights and interests of Missouri citizens who have been adjudged incapacitated and who are individuals with "mental illness" or "developmental disabilities" as those terms are defined at 42 U.S.C. §§ 10802 and 15002. These individuals are MOPAS' constituents.

14. The MOPAS constituents on whose behalf this action brought have significant disabilities that substantially limit one or more major life activities. These constituents are, therefore, individuals with disabilities for the purposes of the Americans with Disabilities Act and the Rehabilitation Act.

15. The MOPAS constituents on whose behalf this action is brought have each suffered, or will suffer, such injuries that would allow them to individually bring suit against defendants.

16. Defendant Matt Blunt is the Secretary of State of the State of Missouri. As Secretary of State, Defendant Blunt is responsible for such duties in relation to elections as the law provides. Mo. Const. Art. 4, § 14. He is the state's chief election official. See V.A.M.S. 28.035; V.A.M.S. 115.136. Defendant Blunt is also required to notify local election authorities of persons within their respective jurisdictions who have been adjudged incapacitated. V.A.M.S. 115.195(3). Defendant Blunt has the responsibility to oversee the administration of elections in Missouri. Defendant Blunt's primary office is located in Jefferson, Missouri.

17. Defendant Jeremiah W. (Jay) Nixon is the Attorney General of the State of Missouri. Defendant Nixon is charged with instituting proceedings to enforce Art. 8, § 2 of the Missouri Constitution and statutes that disenfranchise persons who have been adjudged incapacitated and appointed a guardian. See V.A.M.S. 27.060. Defendant Nixon's primary office is located in Jefferson City, Missouri.

18. Defendants Leo G. (Gary) Stoff, Jr., and James P. O'Toole are directors of the Defendant Board of Election Commissioners for the City of St. Louis. Defendant Michael A. Lueken is secretary and a member of Defendant Board of Election

Commissioners for the City of St. Louis. Defendant Derio L. Gambaro is chairperson of Defendant Board of Election Commissioners for the City of St. Louis. Defendants Angela da Silva and Yvonne B. Hunter are members of Defendant Board of Election Commissioners for the City of St. Louis. Defendant Board of Election Commissioners for the City of St. Louis is the election authority for St. Louis City. V.A.M.S. 115.015.

19. Defendants Sharon Turner Blue and Ray S. James are directors of the Defendant Board of Election Commissioners for Kansas City. Defendant Cheryl Lynn Bisbee is secretary and a member of the Defendant Board of Election Commissioners for Kansas City. Defendant Linda S. Tarpley is chairperson of the Defendant Board of Election Commissioners for Kansas City. Defendants Rosa James and Bruce B. Waugh are members of the Defendant Board of Election Commissioners for Kansas City. Defendant Board of Election Commissioner for Kansas City is the election authority for Kansas City.

20. By statute, the election authority is required to supervise the registration of voters within its jurisdiction and insure persons are qualified to register. V.A.M.S. 115.141.

## MISSOURI CONSTITUTION AND STATUTES

21. The Missouri Constitution states, *inter alia.*, "[N]o person who has a guardian of his or her estate or person by reason of mental incapacity[] appointed by a court of competent jurisdiction … shall be entitled to vote." Mo. Const. Art. 8, § 2.

22. By statute, the State of Missouri prohibits any persons who have been adjudged incapacitated by a court from registering to vote or voting. V.A.M.S. 115.133.

23. Persons under guardianship, and persons who assist them, may be subject to criminal charges for casting or encouraging an illegal vote. V.A.M.S. 115.175; V.A.M.S. 115.631. A class one election offense is a felony punishable "by imprisonment of not more than five years or by fine of not less than two thousand five hundred dollars but not more than ten thousand dollars or by both such imprisonment and fine[.]" V.A.M.S. 115.631. What is more, the State of Missouri permanently declares persons convicted of a misdemeanor or felony related to the right of suffrage ineligible to register to vote or vote. V.A.M.S. 115.133(3).

## FACTS

24. Prye was born on November 13, 1952, in Memphis, Tennessee. He was one of the first black students to attend Central High School, the city's best high school, during desegregation. He was at school on April 4, 1968 when—about a mile away-- Martin Luther King, Jr., was killed at the Lorraine Motel. Other students and some teachers celebrated. This event, amongst others, convinced Prye that he would do whatever it took to overcome disadvantage and discrimination. Upon graduating from high school, Prye received a scholarship from Yale University and completed his undergraduate studies in New Haven. After college Prye attended law school at Harvard, where he was on the staff of the Public Law Review. Prye began his legal career by working for two firms in New York City. He sometimes taught legal writing courses at New York University, and he was awarded an L.L.M. in taxation by N.Y.U. Prye left New York City because he wanted to teach fulltime. He taught several years at the Vermont Law School,

7

then at the University of Illinois School of Law. During several of these years, Prye wrote a regular column in the Memphis newspaper on estate planning and related issues, including guardianship. It was at the University of Illinois and around age 49 that Prye's condition deteriorated. He is now diagnosed with schizoaffective disorder. On December 12, 2003, Office of State Guardian was appointed as guardian of Prye's person by the Circuit Court of Sangamon County, Illinois. The same Court appointed Office of State Guardian as guardian of Prye's estate on March 11, 2004. Since April 2004, Prye has resided in St. Louis, Missouri. There is currently pending a petition for appointment of a guardian in the Missouri Circuit Court, Twenty-second Judicial Circuit, Probate Division, in St. Louis.

25. The Circuit Court of Sangamon County, Illinois, appointed a guardian without limitation and did not consider Prye's competence to vote. Illinois law does not disenfranchise Illinois residents simply because they have been appointed a guardian. 10 ILCS 5/3-1 (qualifications to vote in Illinois); see *Miller v. State Board of Elections*, 1989 WL 36212 (N.D.Ill. 1989) (discussion of fact that mental incapacity is not a disqualification for voting under Illinois law). On October 28, 2004, the Court found that it did not have jurisdiction to limit Prye's guardianship so as to reserve to Prye the right to vote since its appointment of a guardian had not stripped him of the right in the first instance.

26. The Circuit Court in St. Louis, in considering the case pending before it, is not authorized by Missouri law to consider Prye's capacity to vote or to reserve to him the right to vote in the event a guardian is appointed. It is likely the Court

8

Case 2:04-cv-04248-ODS   Document 54   Filed 12/06/04   Page 8 of 19

will adjudge Prye incapacitated and appoint a guardian if it finds Prye is a person who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that he lacks capacity to meet essential requirements for food, clothing, shelter, safety, or other care such that serious physical injury, illness, or disease is likely to occur. See V.A.M.S. 475.010, *et seq.* The determinations the Court is required to make have no bearing on or relation to the capacity to vote. Indeed, the Court ruled evidence of Prye's capacity for voting was irrelevant when it was offered at his guardianship hearing.

27. Prye is interested in politics. He has regularly voted in the past. He understands the nature of the political process and is competent to vote. He only learned that he was ineligible to vote in Missouri when he recently sought to register to vote.

28. On September 24, 2004, Prye attempted to register to vote in the State of Missouri by completing a Missouri Voter Registration Application. In order to make his application truthful, Prye struck the assertion contained on the form application that he had not been adjudged incapacitated. Defendant Stoff, on behalf of Defendant St. Louis Board of Election Commissioners, denied Prye's application on the sole basis that Prye had been adjudged mentally incapacitated.

29. Scaletty is 54 years old and is under guardianship. He is diagnosed with paranoid schizophrenia. He voted consistently until the November 2, 2004 election. He did not vote in the 2004 general election because on or about September 7, 2004, he received a letter from the Defendant Board of Election Commissions for Kansas City telling him that he was ineligible to vote based on his guardianship

9
Case 2:04-cv-04248-ODS   Document 54   Filed 12/06/04   Page 9 of 19

status.  For about 20 years, Scaletty worked as a construction electrician.  He used to fly airplanes as a hobby.

30. Scaletty believes voting is important because it is the height of democracy and provides him a chance to voice his opinions.  He understands the nature and purpose of elections.

31. Sharp is 41 years old.   He has been diagnosed with schizophrenia and is under guardianship.  He has lived in Kansas City since 1989.  Sharp voted in the 2000 presidential election and regularly in prior elections.  He did not vote in the November 2, 2004, general election because he had heard from other residents at the assisted-living facility where he resides that persons under guardianship could not vote and that it would be a crime to try to vote.

32. Sharp wants to vote so that he can voice his choices on key issues.  He likes to hear what the candidates have to say and look at all sides of issues.  He understands the nature and purpose of elections.

33. Plaintiffs meet all of the qualifications to vote in the State of Missouri except that they have been adjudged incapacitated and appointed guardians.  Mo. Const. Art. 8, § 2; V.A.M.S. 115.133.  The sole reason they are ineligible to register to vote and vote in Missouri is that they is under guardianship.

34. Plaintiffs were denied the right to vote in the November 2, 2004, general election.

35. As Missouri's designated protection and advocacy system for individuals with mental disabilities, MOPAS represents individuals who, like the individual plaintiffs, have guardians appointed for them because of their mental disabilities.

36. MOPAS expends time, money, and other resources on behalf of individuals with mental disabilities to address their disenfranchisement and to protect their rights.

37. Many MOPAS constituents who are under guardianship are competent to vote but are prohibited from voting based on the challenged statutory and constitutional provisions.

## COUNT I
*Violation of Due Process Clause*

38. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 37 as if fully incorporated herein.

39. The Missouri Constitution and statutes deny Plaintiffs due process in violation of the Fourteenth Amendment to the Constitution of the United States by disenfranchising them without a process that requires proof that they lack the capacity to vote.

40. Missouri's guardianship statutes do not provide due process because they provide neither notice nor the opportunity to be heard on the issue of voting. Any notice or opportunity to be heard that might be provided to some persons is without uniform standards, is arbitrary, and varies widely throughout the state. Further, Missouri deprives its residents of the right to vote based on guardianship proceedings of other states without regard for whether those states' guardianship proceedings consider the individual's capacity to vote.

41. Because the right to vote is a fundamental right and, thus, a fundamental liberty interest, the burden of proving that it should be taken away must rest with the state. Even if an individual could return to probate court to seek to have the right

to vote restored, the burden of proof would be inappropriately placed on the individual.

42. Because the fundamental right to vote is implicated, the Missouri Constitution and statutes that disenfranchise individuals who have been appointed a guardian should be reviewed under the strict scrutiny standard.

43. Plaintiffs are entitled to injunctive and declaratory relief because they are injured by Defendants' acts and omissions that deprive them of the right to vote in violation of the Due Process Clause of the Fourteenth Amendment. Their claim is brought pursuant to 42 U.S.C. § 1983.

## COUNT II
*Violation of Equal Protection Clause*

45. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 37 as if fully incorporated herein.

46. The Equal Protection Clause of the Fourteenth Amendment provides, "[N]o state shall deny to any person within its jurisdiction the equal protection of the laws." U.S. Const., amend. XIV.

47. Plaintiffs are similarly situated to individuals who have the capacity to vote but who have not been appointed a guardian. Because they have not been appointed a guardian, the individuals in the latter class retain the fundamental right to vote.

48. Defendants, by their acts and omissions under color of state law, are depriving Plaintiffs of rights secured by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States by disenfranchising them on the ground that they are under guardianship.

49. Voting is a fundamental right, yet Mo. Const. Art. 8, § 2 and the Missouri statues that disenfranchise Plaintiffs are not narrowly tailored to achieve a compelling state interest.

50. Plaintiffs are entitled to injunctive and declaratory relief because being denied the right to vote in violation of the Equal Protection Clause of the Fourteenth Amendment injures them. Their claim is brought pursuant to 42 U.S.C. § 1983.

## COUNT III
*Violation of Full Faith and Credit Clause*

51. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 8, 16-18, 20-28, and 33-34 as if fully incorporated herein.

52. The Full Faith and Credit Clause of the Constitution provides,

> Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial Proceedings of every other State. And the Congress may be general Laws prescribe the Manner in which such Acts, Records and Proceedings shall be proved, and the Effect thereof. U.S. Const., Art. IV, § 1.

53. The judgments of the Illinois state court finding Prye to be in need of a guardian and appointing a guardian qualify for recognition in the State of Missouri.

54. By applying Missouri Const., Art. 8, § 2, and V.A.M.S. 115.113 to Prye on the sole basis of the judgment of the Illinois Court that did not restrict his right to vote, Defendants disenfranchised him in a manner that violates the Full Faith and Credit Clause of the Constitution of the United States.

13

55. Prye is entitled to declaratory and injunctive relief because being denied the right to register to vote and to vote in a manner that violates the Full Faith and Credit Clause injured him. His claim is brought pursuant to 28 U.S.C. § 1738.

COUNT IV
*Violation of Americans with Disabilities Act*

56. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 37 as if fully incorporated herein.

57. Subtitle A of Title II of the Americans with Disabilities Act (ADA) prohibits public entities from discriminating against persons with disabilities in their programs, services, and activities. 42 U.S.C. §§ 12131-12134. Regulations implementing subtitle A are codified at 28 C.F.R. part 35.

58. Title II's definition of "public entity" includes any state or local government or "any department, agency … or other instrumentality" of a state or local government. 42 U.S.C. § 12131(1)(A), (B).

59. Defendants are responsible for the operation of public entities for the purposes of Title II.

60. Plaintiffs have a disability within the meaning of 42 U.S.C. § 12102(2) and 28 C.F.R. § 35.104.

61. Plaintiffs are "qualified individual[s] with a disability" within the meaning of 42 U.S.C. § 12131(2) and 28 C.F.R. § 35.104 because they meet all voting eligibility requirements other than the requirement that they not be under guardianship.

62. The State of Missouri is a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. § 35.104.

63. Defendants subject Plaintiffs to discrimination by excluding them from voting in

14
Case 2:04-cv-04248-ODS   Document 54   Filed 12/06/04   Page 14 of 19

federal, state, and local elections. The exclusion and discrimination violate 42 U.S.C. § 12132, which states:

> Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

64. Defendants are violating the regulations promulgated under the ADA in the following respects:

   a. Defendants, on the basis of Plaintiffs' disabilities, exclude them from participation in federal, state, and local elections, thereby subjecting him to discrimination. See 28 C.F.R. 35.130(a) ("No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.").

   b. Defendants, on the basis of Plaintiffs' disabilities, deny them the opportunity to participate in or benefit from their services, programs, and activities, to wit: voter registration and voting. See 28 C.F.R. 35.130(b)(1)(i)("A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability[,] [d]eny a qualified individual with a disability the opportunity to participate in or benefit from the aid, benefit, or service[.]").

15

c. Defendants, on the basis of Plaintiffs' disabilities, limit them in the enjoyment of their right to vote. See 28 C.F.R. 35.130(b)(1)(vii)("A public entity, in providing any aid, benefit, or service, may not, directly or through contractual, licensing, or other arrangements, on the basis of disability[,] [o]therwise limit a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving the aid, benefit, or service.").

d. Defendants utilize criteria for eligibility to register to vote and to vote that have the effect of subjecting Plaintiffs to discrimination on the basis of disability. See 38 C.F.R. 35.130(b)(3)(i) ("A public entity may not, directly or through contractual or other arrangements, utilize criteria or methods of administration [t]hat have the effect of subjecting qualified individuals with disabilities to discrimination on the basis of disability[.]").

e. Defendants impose eligibility criteria for voting that screen out or tend to screen out individuals with disabilities, including Prye, Scaletty, and Sharp, from fully and equally enjoying voting and elections even though the criteria are not necessary for voting and elections in Missouri. See 28 C.F.R. 35.130(b)(8) ("A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any service, program, or activity, unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered.").

65. As a result of Defendants' violations of the ADA and its implementing

regulations, Defendants are liable to Plaintiffs for injunctive and declaratory relief pursuant to 42 U.S.C. § 12133.

COUNT V
*Violation of §504 of the Rehabilitation Act of 1973*

66. Plaintiffs repeat and re-allege each and every allegation in paragraphs 1 through 37 as if fully incorporated herein.

67. Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (Section 504), provides, *inter alia.*,

> No otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency…

68. Plaintiffs are "qualified individual[s] with a disability" as defined by 29 U.S.C. §705(20).

69. Plaintiffs meet all of the qualifications to vote in the State of Missouri except for that he has been adjudged incapacitated and appointed a guardian.

70. Defendants receive federal assistance for the purposes of Section 504. 29 U.S.C. § 794(a).

71. Defendants discriminate against Plaintiffs by not allowing them to register to vote or to vote although registering to vote and voting fit within the definition of "program or activity" provided by section 504. 29 U.S.C. § 794(b)(1)(A).

72. As a result of Defendants' violations of § 504 of the Rehabilitation Act of 1973,

17

Case 2:04-cv-04248-ODS   Document 54   Filed 12/06/04   Page 17 of 19

Defendants are liable to Plaintiffs for injunctive and declaratory relief pursuant to 29 U.S.C. §794a.

## RELIEF

Plaintiffs request judgment in their favor and the following relief:

    A.    A preliminary and permanent injunction requiring Defendants to permit Prye, Scaletty, Sharp, and others similarly situated to register to vote, to allow Plaintiffs to vote in future elections, to give notice to persons under guardianship that they can register to vote, and to require notice and the opportunity to be heard before the right to vote may be lost in future guardianship proceedings;

    B.    A declaratory judgment holding that the Missouri Constitution and statutes that disenfranchise Plaintiffs on the ground that they are under guardianship or have been adjudged incapacitated are invalid because they violate the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, the Full Faith and Credit Clause of the Constitution, the Americans with Disabilities Act, and Section 504 of the Rehabilitation Act of 1973;

    C.    Costs and reasonable attorneys fees under 42 U.S.C. §§ 1988, 12133, 12205; 29 U.S.C. § 791, *et seq.*, and other relevant provisions of law;

    D.    Such other and further relief as this Court deems just and proper.

Dated: December 6, 2004.

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827
Jeff M. Plesko
John Wank
GUARDIANSHIP AND ADVOCACY COMMISSION
4500 College Avenue, #100
Alton, IL 62002
(618) 474-5503
(618) 474-5517 (facsimile)

Ira A. Burnim
Jennifer Mathis
BAZELON CENTER FOR MENTAL HEALTH LAW
1101 15th Street, NW, Suite 1212
Washington, DC 20005
(202) 467-5730
(202) 223-0409 (facsimile)

Neil Bradley
ACLU NATIONAL VOTING RIGHTS PROJECT
2725 Harris Tower
233 Peachtree Street NE
Atlanta, GA 30303
(404) 523-2721
(404) 653-0331 (facsimile)

Denise D. Lieberman, #47013
AMERICAN CIVIL LIBERTIES UNION
    OF EASTERN MISSOURI
4557 Laclede Ave.
St. Louis, MO 63108
(314) 361-2111
(314) 361-3135 (facsimile)

Michael H. Finkelstein, #25468
David E. Hale, #54641
MISSOURI PROTECTION AND
    ADVOCACY SERVICES
925 South Country Club Drive
Jefferson City, MO 65109
(573) 893-3333
(573) 893-4231 (facsimile)