IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| STEVEN M. PRYE, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 04-4248-CV-C-ODS |
| | ) |
| ROBIN CARNAHAN, et al., | ) |
| | ) |
| Defendants. | ) |

<u>ORDER AND OPINION (1) DENYING PLAINTIFFS' MOTION FOR SUMMARY
JUDGMENT AND (2) GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT</u>

Pending are cross-motions for summary judgment. For the following reasons, Plaintiffs' motion is denied and Defendants' motion is granted.

I. BACKGROUND

Steven Prye originally filed this suit in October 2004, seeking an order requiring Defendants to allow Prye to register to vote before the November 2004 election. Following a hearing, the Court denied Prye's request for a preliminary injunction. On December 6, 2004, an Amended Complaint was filed that, *inter alia*, added Bob Scaletty, Patrick Sharp, and Missouri Protection and Advocacy Services, Incorporated ("MPAS") as Plaintiffs. At their requests, Sharp and Prye were dismissed on July 21, 2005, and September 22, 2005, respectively, leaving Scaletty and MPAS as the only Plaintiffs. This effectively left Counts I, II, IV and V for consideration because Count III pertained only to Prye.

Generally speaking, the Amended Complaint challenges Missouri's Constitution and statutes that deny the right to vote to individuals who have been appointed guardians under a full order of protection due to mental incapacity. Counts I and II assert claims under the Equal Protection and Due Process clauses, respectively, while

Counts IV and V assert claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act.

For purposes of the parties' cross-motions for summary judgment, the following facts are undisputed.[1] Scaletty has been diagnosed as suffering from schizophrenia and, due to his mental illness, in 1999 was placed under a full order of protection in accordance with procedures established in Missouri law. Although the order of protection reserved his right to vote, he was subsequently denied the right to vote by election officials who explained that state law does not allow individuals under an order of protection to vote. However, in January 2005 (after Scaletty became a party in this case), the Kansas City Board of Election Commissioners sent Scaletty's guardian a voter identification card on his behalf and advised that Scaletty was eligible to vote.

MOPAS is a not-for-profit corporation the State of Missouri has designated, pursuant to both the Protection and Advocacy for Individuals with Mental Illness Act, 42 U.S.C. § 10801 *et seq.* ("PAIMI"), and the Developmental Disabilities Assistant and Bill of Rights Act, 42 U.S.C. § 15001 *et seq.* ("DD Act"), as Missouri's statewide protection and advocacy entity to protect and advocate for the legal and civil rights of Missourians who have mental illnesses and developmental difficulties. Pursuant to the DD Act, MOPAS is authorized to pursue legal and other remedies for "the protection of, and advocacy for, the rights of" individuals with developmental disabilities, 42 U.S.C. § 15043(a)(2)(A)(I), and is independent of any agency (including any state agency) "that provides treatment, services, or habilitation to individuals with developmental disabilities." Id. § 15043(a)(2)(G). The provisions under PAIMI are similar. 42 U.S.C. § 10805(a)(1) -(2).

---

[1] The Court has not attempted to summarize all the facts advanced by the parties because many of them (including particularly the generalized observations advanced by Plaintiffs) are not relevant to the governing legal inquiry.

## II. DISCUSSION

### A. Jurisdiction

Defendants challenge the Court's jurisdiction, contending (1) Scaletty lacks standing because his claims are moot and (2) MOPAS lacks standing because it has not suffered an injury and (with Scaletty's anticipated dismissal), there are no individual plaintiffs with standing in the case. The Court disagrees.

Defendants' arguments regarding Scaletty conflate two related jurisdictional concepts. "The Supreme Court has repeatedly described the mootness doctrine as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" McCarthy v. Ozark School Dist., 359 F.3d 1029, 1035 (8th Cir. 2004) (quoting Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc., 528 U.S. 167, 189 (2000)). Thus, standing is to be evaluated at the time the lawsuit is initiated, and there is no doubt that at the time Scaletty joined the suit as a plaintiff he was suffering an injury in fact because he was denied the right to vote.

The mootness doctrine is an outgrowth of Article III's case and controversy requirement. E.g., Lupiani v. Wal-Mart Stores, Inc., 435 F.3d 842, 847 (8th Cir. 2006). "Since Art[icle] III courts are precluded from issuing advisory opinions, it necessarily follows that they are impotent to decide questions that cannot affect the rights of litigants in the case before them." Super Tire Eng'g Co. v. McCorkle, 416 U.S. 115, 127 (1974) (quotations omitted). Scaletty seeks only equitable relief and not damages; the most he could hope for is an order or injunction requiring Defendants to allow him to vote, but Defendants have taken this action voluntarily. Consequently, the Court cannot affect the parties' rights or change their relationship, so Scaletty's claims are moot.

However, there are circumstances in which moot cases should continue and not be dismissed. One exception arises when the defendant voluntarily ceases the challenged practice or act. "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the

3

legality of the practice unless it is *absolutely clear* that the allegedly wrongful behavior could not reasonably be expected to recur." Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Resources, 532 U.S. 598, 609 (2001) (quotations omitted, emphasis supplied); see also Adarand Constructors, Inc. v. Slater, 528 U.S. 216, 222 (2000).  "The 'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." Friends of the Earth, 528 U.S. at 189 (quoting United States v. Concentrated Phosphate Export Ass'n, 393 U.S. 199, 203 (1968)).

  Defendants do not dispute these legal precepts, but instead insist they have satisfied their burden by issuing Scaletty a voter registration card and not further interfering with his right to vote. This only demonstrates Defendants have voluntarily ceased the challenged conduct. Keeping in mind that theirs is a "heavy burden," the Court cannot conclude it is "absolutely clear" Defendants will not reverse course and return to their prior course of prohibiting Scaletty from voting. Therefore, the voluntary cessation exception to the mootness doctrine applies, and the Court has jurisdiction over Scaletty's claims.

  Defendants also refer to cases discussing the certainty of prospects for harm, but they are cases discussing whether and when the fear of injury is a sufficient injury in fact to confer standing upon the plaintiff. As discussed, standing is not an issue because Scaletty was not allowed to vote when he asserted his legal claims in this case and there can be no doubt that being denied an opportunity to vote is an injury in fact. Caselaw clearly places the burden on Defendants to demonstrate their voluntary cessation is permanent, and Defendants have not satisfied this burden.

  The arguments regarding MOPAS depend, in large measure, on the arguments regarding Scaletty. Defendants contend associational standing can exist only if the association is joined by a member who has individual standing. To the extent this legal reasoning is valid (an issue the Court need not address[2]), it is answered by the Court's

---

[2]There is some authority suggesting that an association may have standing so long as one of the association's members would have standing, regardless of whether the individual joins in the suit.

conclusion that Scaletty has standing to sue. The Court also holds MOPAS satisfies the other requirements for associational standing because the interests it asserts are germane to its purpose and the relief it seeks does not require participation of individual members. E.g., United Auto., Aerospace & Agric. Implement Workers of Am. v. Brock, 477 U.S. 274, 281-82 (1986) (quoting Hunt v. Washington State Apple Advertising Comm'n, 432 U.S. 333, 343 (1977) and Warth v. Seldin, 422 U.S. 490, 511 (1975)).

## B.  Eleventh Amendment Immunity

Defendants Robin Carnahan and Jeremiah (Jay) Nixon, who have been sued in their official capacities as Missouri Secretary of State and Missouri Attorney General, respectively, contend they are entitled to Eleventh Amendment immunity because they are not proper defendants in this action. This argument is somewhat confusing because it improperly blends two distinct defenses.

These officials contend they are not responsible for administering elections or registering voters. If this were the case, these officials would be entitled to judgment for that reason alone just like any other purported defendant in any other case who had no role in causing the plaintiff's injury, and there would be no need to consider the Eleventh Amendment. However, the officials' claim of noninvolvement lacks merit. Plaintiffs' challenge is not limited to the decisions of those who register voters, but to laws that dictate who may or may not vote. By law, the Missouri Secretary of State and the Missouri Attorney General are charged with carrying out statutory directives on these matters, and are therefore proper defendants in this case. This observation resolves the issue without necessitating consideration of the novel assertion that the Eleventh Amendment bars imposition of purely prospective equitable relief.

## C. Statutory Claims[3]

Plaintiffs' claims rely variously on general propositions about individuals adjudged to be incapacitated and specific facts from specific cases. Separating these matters is important to an understanding of Plaintiffs' claims as well as the legal analysis they necessitate. This process is best undertaken by starting with the general propositions and arguments.

### 1.

The Missouri Constitution establishes the qualifications for voters and in so doing declares, *inter alia*, that "no person who has a guardian of his or her estate or person by reason of mental incapacity, appointed by a court of competent jurisdiction . . . shall be entitled to vote . . . ." Mo. Const. Art. 8, § 2. Prior to 1958, the provision declared simply "no insane person" could vote; the language was changed "to give polling officials something tangible on which to decide whether a person was disqualified by reason of his mental condition." New v. Corrough, 370 S.W.2d 323, 327 (Mo. 1963).

Missouri's Probate Code establishes the procedures by which an individual might be adjudicated as incapacitated and a guardian appointed. An "incapacitated person" is "one who is unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to such an extent that he lacks capacity to meet essential requirements for food, clothing shelter, safety or other care such that serious physical injury, illness, or disease is likely to occur." Mo. Rev. Stat. § 475.010(9). However, a person may be adjudicated to be "partially incapacitated" if they are "unable by reason of any physical or mental condition to receive and evaluate information or to communicate decisions to the extent that he lacks capacity to meet, in part, essential requirements for food, clothing, shelter, safety, or other care without

---

[3] In light of the Court's conclusions regarding the application of these statutes, there is no need to consider Defendants' alternative argument that the statutes are unconstitutional.

court-ordered assistance." Id. § 475.010(14). A finding of partial incapacity does not trigger any legal disabilities "*except* to the extent specified in the order of adjudication, provided that the court shall not impose . . . any legal disability other than those which are consistent with the condition of the ward or protectee." Id. § 475.078.1 (emphasis supplied). Conversely, a finding of full or total incapacity "does operate to impose . . . all legal disabilities provided by law, *except* to the extent specified in the order of adjudication . . . ." Id. § 475.078.2 (emphasis supplied). One such "legal disability provided by law" is a restriction on the ability to vote. See id. § 115.133.2. The combined effects of the statutes cited is to (1) preserve the right to vote for partially incapacitated individuals, unless the court specifies otherwise, and (2) deny the right to vote for totally incapacitated individuals, unless the court specifies otherwise. As a final indication that a probate judge is empowered and obligated to tailor an order of protection to the needs of the ward or protectee and not impose limits that are greater than necessary, section 475.078.3 states as follows (the emphasis is supplied):

> A person who has been adjudicated incapacitated . . . shall be presumed to be incompetent. A person who has been adjudicated partially incapacitated . . . shall be presumed to be incompetent. The court . . . may determine that an incapacitated . . . *or* partially incapacitated . . . person is incompetent for some purposes and competent for other purposes.

Plaintiffs do not contest that a person may be mentally incapacitated to such a degree that Missouri may lawfully deprive that person of the right to vote. Plaintiffs instead contend Missouri violates federal law by denying the right to vote to all persons under a full order of protection due to a finding of incapacity because incapacitated individuals (or, at least some of them) are qualified to vote notwithstanding a probate court's finding of incapacity.

7

The Americans with Disabilities Act ("ADA")[4] declares that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. A "qualified individual with a disability" is "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." Id. § 12131(2).

Defendants argue Congress did not intend the ADA to apply to elections. In so doing, they overstate the reach of the Fifth Circuit's holding in Lightburne v. City of El Paso. There, the issue at hand was whether the Texas Secretary of State was a proper defendant: the Texas Secretary of State was statutorily charged with the duty of "enforcing election laws" and the plaintiffs contended the ADA was an "election law" within the meaning of the Texas statute. 118 F.3d 421, 428-29 (5th Cir. 1997), cert. denied, 522 U.S. 1052 (1998). The Fifth Circuit held it was not, so the Texas Secretary of State was not the official responsible for enforcing its provisions in the election context. Id. at 429-30. The Fifth Circuit did not hold the ADA has no application to state elections. To the contrary, the plain language of the statute dictates that it does. Cf. Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210-11 (1998) (holding ADA applies to prisons); Gorman v. Bartch, 152 F.3d 907, 912-13 (8th Cir. 1998) (holding ADA applies to transportation of arrested individual to jail). An election is undeniably an activity of a public entity, and the ADA prohibits excluding qualified individuals with disabilities from participating in a public entity's activities.[5]

---

[4]Plaintiffs raise claims under the Americans with Disabilities Act ("ADA") and the Rehabilitation Act. These statutes are similar in all pertinent respects and caselaw interpreting one may be used to interpret the other. E.g., Allison v. Department of Corrections, 94 F.3d 494, 497 (8th Cir. 1996). In the interests of simplicity and brevity, the Court will focus on the ADA and observe that the analysis would be the same for the Rehabilitation Act.

[5]By way of a crude and obviously unlikely example, the Court has no doubt that a state law prohibiting paraplegics from voting would violate the ADA. Of course, this

The difficulty arises in determining whether people who have been adjudged incompetent can, with or without accommodation, meet the essential eligibility requirements for voting.  There is no universal answer to this question: some can, and some cannot.  Plaintiffs concede several states have established competency as a prerequisite to voting, and these decisions are specifically countenanced in the National Voter Registration Act, 42 U.S.C. § 1973gg-6(a)(3)(B), which allows states to remove registrants from the list of eligible voters "as provided by State law, by reason of criminal conviction or mental incapacity."  No federal statute – including the ADA and the Rehabilitation Act – purports to establish a standard of competency for voters.  However, Plaintiffs have conceded that (1) a state may establish a standard of competency for voters and (2) under such a standard, some people may be so incapacitated they lack the ability to vote.  The question thus becomes: does Missouri's method for making this determination violate the ADA?  Considering the entirety of Missouri law, the Court answers this question in the negative.

In their generalized attack, Plaintiffs point only to the constitutional and statutory language indicating that a person under a full order of protection is presumed incompetent and cannot vote.  This narrow examination is enlightened by examining the totality of Missouri law, which requires an individualized determination of the individual's mental capacity and entry of an order that is no more limiting than necessary to protect the individual.  <u>See</u>, <u>e.g.</u>, Mo. Rev. Stat. § 475.078.3 (allowing the probate court to find, and enter an order recognizing, a person is incompetent as to some matters and competent as to others).  If the evidence in a particular case persuades a probate court that a person is mentally incapacitated as to some matters but not incapacitated with respect to his or her ability to vote, the court is to enter an order tailored to reflect this finding.  It makes no difference if one views the person as (1) partially incapacitated or (2) fully incapacitated except for certain areas, as contemplated by section 475.078.2: the net effect is to afford the person the protection needed and allow him or her to operate without the strictures of an order of protection with respect to those aspects of

---

observation is purely *dicta*.

life for which protection is not required --including, if appropriate in a given case, the right to vote).

The Court's conclusion might be different if the entire sum and substance of Missouri law dictated that any person with a legally appointed guardian – regardless of that person's abilities and limitations – could not vote. Such a situation might violate the ADA. However, this is not the entirety of Missouri law. Missouri affords an individualized determination of a person's abilities and limitations and denies the right to vote to those who lack the mental capacity to exercise that right and therefore are not qualified to do so. In short, the scheme is designed to differentiate those who are qualified to vote from those who are not, and deny the right only to those who are not.

<u>2.</u>

In their more specific arguments, Plaintiffs present evidence tending to demonstrate certain individuals have been denied the right to vote following proceedings in probate court even though they actually have the mental capacity to vote. The difficulty arises in determining what role, if any, this contention can play in this proceeding – particularly in light of Plaintiffs' failure to clearly indicate the role this evidence is intended to play.

To the extent Plaintiffs intend to suggest individuals adjudged mentally incapacitated are irrevocably branded as unable to vote, their argument fails. These individuals have recourse in the probate proceedings. Apart from a generalized ability to seek modifications to an order of protection when conditions change, state law requires periodic review by the probate court as a matter of course. <u>See</u> Mo. Rev. Stat. § 475.082.

Plaintiffs may also be contesting the correctness or legality of the rulings made in these individual cases. Setting aside the question of whether this is permissible given that these individuals are not parties to the case, the Court observes the effort is

10

Case 2:04-cv-04248-ODS   Document 151   Filed 07/07/06   Page 10 of 13

impermissible as violative of the Rooker/Feldman doctrine.[6] The doctrine bars relief in "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280, 284 (2005). The Court does not intend to utilize the term "losers" as referring to the Plaintiffs, but the underlying concept applies: Plaintiffs contend a state court's decision violated the law and are asking a federal court to invalidate that decision. This is not allowed. Id. at 284-85.

It may be that Plaintiffs simply wish to demonstrate the Missouri probate courts occasionally produce incorrect results. If this is their intent, then two problems are presented. First, the combined effects of the Rooker/Feldman doctrine and customary preclusion principles prevent the Court from relitigating or "re-deciding" the extent of an individual's competency. The Court must accept the findings and conclusions of the state courts on this matter and cannot endeavor to ascertain the correctness of those decisions as part of an effort to invalidate the process as a whole. Second, even if it could be established that Missouri's probate courts make errors, such a showing would not demonstrate a violation of federal law. The ADA and the Rehabilitation Act do not establish a basis for reviewing state court decisions or "federalizing" competency hearings.

Finally, it may be that Plaintiffs are relying on these specific examples to demonstrate the content of Missouri law. In other words, they may be arguing that the failure to preserve these individuals' voting rights demonstrates Missouri law is incapable of doing so. This argument not only flies in the face of the statutory language cited elsewhere, but it also suffers from the logical fallacy known variously as "arguing general from the specific" or "hasty generalization."

---

[6]The doctrine is named after the Supreme Court's decisions in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923) and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

### D. Constitutional Claims

Plaintiffs' constitutional arguments rest on the same incomplete characterization of Missouri law as do their statutory arguments. They describe Missouri law as erecting a "voting ban [that] relies not on a specific determination about an individual's competence to vote, but instead presumes that individuals lack the competence to vote based on about factors that are distinct from, and more complex than, the ability to vote." Memorandum in Support of Plaintiffs' Motion for Summary Judgment (Doc. # 133) at 33; see also id. at 32 (describing Missouri law as creating a "categorical deprivation" of the right to vote). As noted earlier, this is not an accurate description of Missouri law. A full order of protection may be issued with exceptions, including an exception preserving the right to vote. A partial order of protection may also preserve the right to vote. Regardless of the option employed, the order actually issued is based on the particular circumstances of the person involved and based on an individualized assessment by a judge. This is hardly the categorical or generalized prohibition Plaintiffs would have the Court believe exists.

As a final indicia of the flaw in Plaintiffs' argument, the Court need look no further than Plaintiff Scaletty's circumstances (which were alluded to earlier). Scaletty was placed under a full order of protection that specifically reserved his right to vote. Id. at 7. It is true that this aspect of the order was not honored until this suit was filed, but this does not demonstrate a flaw in the process for determining whether Scaletty (or anyone else) has the mental capacity to vote.[7] To the contrary, it demonstrates Plaintiffs' description of Missouri law is inaccurate, and individualized determinations are both permitted and made.

---

[7] The Court does not wish to minimize the importance of Scaletty's right to vote. However, state and local officials' failure to honor a state court's order or misunderstanding of the content of state law does not demonstrate the unconstitutionality of the process or laws that led to the issuance of the order.

12

## III. CONCLUSION

For these reasons Plaintiffs' Motion for Summary Judgment (Doc. # 132) is denied and Defendants' Motion for Summary Judgment (Doc. # 136) is granted.

IT IS SO ORDERED.

DATE: July 7, 2006

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
UNITED STATES DISTRICT COURT